**United States District Court**
For the Northern District of California

1
2
3
4
5          UNITED STATES DISTRICT COURT
6          NORTHERN DISTRICT OF CALIFORNIA
7

8  J & J SPORTS PRODUCTIONS, INC.,          No. C-09-4711 JSW (EMC)

9          Plaintiff,

10     v.                                     **REPORT AND RECOMMENDATION**
                                              **RE PLAINTIFF'S MOTION FOR**
                                              **DEFAULT JUDGMENT**
11  JOSE MARTINEZ,

12          Defendant.                        **(Docket No. 11)**

13  _____/

14

15          Plaintiff J&J Sports Productions, Inc. ("J&J") has filed suit against Defendant Jose Martinez,

16  alleging that the latter violated both federal and state law by intercepting and exhibiting a particular

17  television program to which J&J was granted exclusive distribution rights.  After Mr. Martinez

18  failed to respond to the complaint in a timely fashion, his default was entered, *see* Docket No. 9

19  (notice of entry of default), and J&J moved for a default judgment.  Although J&J's complaint

20  asserted various causes of action, it moved for a default judgment on only two of the claims – *i.e.*,

21  the claim for a violation of 47 U.S.C. § 605 and the claim for conversion.  The assigned judge

22  referred J&J's motion for default judgment to the undersigned for a report and recommendation.

23  Having considered the papers submitted by J&J, including but not limited to the supplemental brief

24  filed on January 26, 2010, and having held a hearing on the instant motion on February 24, 2010, the

25  Court hereby recommends that the motion for default judgment be **GRANTED** in part and

26  **DENIED** in part.

27

28

**United States District Court**
For the Northern District of California

# I.   FACTUAL & PROCEDURAL BACKGROUND

J&J is a closed circuit distributor of sports and entertainment programming.  *See* Gagliardi Aff. ¶ 3.  As alleged in the complaint, J&J was granted exclusive nationwide commercial distribution (closed circuit) rights to a particular television program, namely, *"Will to Win": Manny Pacquiao v. Marco Antonio Barrera, WBC Featherweight Championship Fight Program*.  The program – which included all undercard bouts – was to be broadcast on October 6, 2007.  *See* Compl. ¶ 9; *see also* Gagliardi Aff. ¶¶ 3, 7.  J&J entered into sublicensing agreements with various commercial entities pursuant to which it granted these entities limited sublicensing rights – more specifically, the rights to publicly exhibit the program within their respective commercial establishments.  *See* Compl. ¶ 10; *see also* Gagliardi Decl. ¶ 3.

On October 6, 2007, one of J&J's investigators, Gary Gravelyn, entered a commercial establishment known as El Burro Crazy, which is owned by Mr. Martinez.  *See* Gravelyn Aff. at 1; *see also* Compl. ¶¶ 7, 12.  Mr. Gravelyn observed two television sets in the establishment, which were showing a boxing match between Steve Forbes and Francisco Bojada.  *See* Gravelyn Aff. at 1.  This match was one of the undercard bouts for the main event (*i.e.*, Pacquiao v. Barrera).  *See* Gagliardi Aff., Ex. 1 (listing Forbes-Bojada match as the fourth fight).  According to Mr. Gravelyn, a cable box was not visible in the establishment but the establishment did have a satellite dish.  *See* Gravelyn Aff. at 1.  In the three minutes that Mr. Gravelyn was at the establishment, he counted approximately seven people (two different head counts).  *See* Gravelyn Aff. at 1-2.

J&J has submitted evidence indicating that it is highly unlikely that the program at issue was innocently or accidentally intercepted.  *See* Gagliardi Decl. ¶ 9 *et seq.*

Based on the above, J&J asserted the following causes of action in its complaint against Mr. Martinez: (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of California Business & Professions Code § 17200.  In its motion for default judgment, however, J&J seeks a default judgment on only two of the causes of action – *i.e.*, violation of § 605 and conversion.

**II.  DISCUSSION**

A.    Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).  Under Federal Rule of Civil Procedure 4(e), an individual such as Mr. Martinez may be served by "delivering a copy of the summons and of the complaint to the individual personally."  Fed. R. Civ. P. 4(e)(2)(A).  In the instant case, J&J has submitted a declaration from a process server establishing that Mr. Martinez was personally served. Accordingly, the Court finds that service of process was properly effected in the case at bar.

B.    *Eitel* Analysis

As noted above, Mr. Martinez's default was entered after he failed to respond to the complaint.  After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55.  A default judgment may not be entered, however, against an infant or incompetent person unless represented in the action by a general guardian or other such representative who has appeared.  *See id.*  Furthermore, a default judgment may not be entered against an individual in military service until after the court appoints an attorney to represent the defendant.  *See* 50 U.S.C. App. § 521.  In the instant case, J&J has provided sufficient evidence demonstrating that Mr. Martinez is not an infant, incompetent person, or a person in military service. *See* Riley Decl. ¶ 3.  Accordingly, the Court may consider whether a default judgment may be entered against Mr. Martinez.

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Upon entry of default, the factual

2  allegations of the plaintiff's complaint will be taken as true, except for those relating to the amount

3  of damages.  *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

4      The Court concludes that many of the *Eitel* factors weigh in favor of granting J&J default

5  judgment.  For example, J&J would be prejudiced if default judgment were not granted because it

6  would be denied the right to judicial resolution of its claims and would likely be without other

7  recourse for recovery.  *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal.

8  2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without

9  other recourse for recovery.").  Also, the sum of money at stake in the action is, for the most part,

10  tailored to the specific misconduct of Mr. Martinez.[1]  *See id.* at 1176 (stating that "the court must

11  consider the amount of money at stake in relation to the seriousness of Defendant's conduct").  In

12  addition, because Mr. Martinez has not filed an answer to the complaint, there is nothing to suggest

13  that there is a possibility of a dispute concerning material facts.  Finally, there is no indication that

14  Mr. Martinez's default was due to excusable neglect.  The Court notes that not only were the

15  summons and complaint served on Mr. Martinez but also various other documents – *e.g.*, the motion

16  for entry of default, *see* Docket No. 5 (proof of service); the motion for default judgment, *see* Docket

17  No. 11 (proof of service); and the supplemental brief in support of the motion for default judgment.

---

[1] As discussed below, the sum of money at stake with respect to the conversion claim is appropriate.  While the Court is not persuaded that the sum of money requested with respect to the § 605 claim is proper, *see, e.g., J & J Sports Prods. v. Montecinos*, No. C-09-02604 JSW (EDL), 2009 U.S. Dist. LEXIS 122709, at *12-18 (N.D. Cal. Dec. 17, 2009) (report and recommendation, subsequently adopted) (concluding that maximum statutory damages were not warranted because "there has been no evidence that Defendants received significant financial benefits"; also concluding that maximum enhanced damages were not appropriate because the establishment did not promote itself by advertising the program, did not assess a cover charge, and did not charge a special premium for food and drinks); *J&J Sports Prods. v. Miranda*, No. C 09-1037 SI, 2009 U.S. Dist. LEXIS 112415, at *2-4 (N.D. Cal. Nov. 16, 2009) (concluding that maximum statutory damages were not warranted and declining to award any enhanced damages because there was no showing of "egregious wrongdoing"; *J & J Sports Prods. v. Canedo*, No. C 09-1488 PJH (JL), 2009 U.S. Dist. LEXIS 111567, at *27 (N.D. Cal. Sept. 14, 2009) (concluding that maximum statutory damages were not warranted and declining to award any enhanced damages), *adopted by* 2009 U.S. Dist. LEXIS 111562 (N.D. Cal. Dec. 1, 2009); *J&J Sports Prods. v. Cortes*, No. C 08-4287 CRB, 2009 U.S. Dist. LEXIS 29353 (N.D. Cal. Mar. 25, 2009) (awarding statutory and enhanced damages but not the maximum), it need not address this issue in any further detail because, as discussed below, it finds the § 605 claim time barred.

United States District Court

For the Northern District of California

1   *See* Docket No. 19 (proof of service).  Furthermore, Mr. Martinez was given notice of the hearing on

2   the motion for default judgment, *see* Docket No. 15 (proof of service), but did not appear.

3          The only factors that deserve closer analysis are the second and third factors -- *i.e.*, the merits

4   of the Plaintiffs' substantive claim and the sufficiency of the complaint.  "The Ninth Circuit has

5   suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may

6   recover.'"  *Pepsico*, 238 F. Supp. 2d at 1175.  As noted above, J&J seeks a default judgment on two

7   claims – the § 605 claim and the conversion claim.

8          Section 605 provides that:

9                  No person not being authorized by the sender shall intercept any radio
                   communication and divulge or publish the existence, contents,
10                 substance, purport, effect, or meaning of such intercepted
                   communication to any person.  No person not being entitled thereto
11                 shall receive or assist in receiving any interstate or foreign
                   communication by radio and use such communication (or any
12                 information therein contained) for his own benefit or for the benefit of
                   another not entitled thereto.
13

14   47 U.S.C. § 605(a).  Here, J&J alleges that Mr. Martinez was not authorized to intercept and exhibit

15   the television program, yet he did so at El Burro Crazy.  *See* Compl. ¶12.  The § 605 claim therefore

16   is legally sufficient.

17          As for the conversion claim, under California law, the tort has three elements: (1) ownership

18   or right to possession of property; (2) wrongful disposition of the property right of another; and (3)

19   damages.  *See G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992).

20   In the instant case, J&J alleges that it obtained the distribution rights for the program at issue and

21   that Mr. Martinez unlawfully intercepted the program and wrongfully converted it for his own use

22   and benefit.  *See* Compl. ¶ 24.  J&J further alleges that Mr. Martinez deprived it of the license fee to

23   which J&J would have been entitled had Mr. Martinez obtained a license from J&J.  *See* Compl. ¶

24   25.  Accordingly, the conversion claim, like the § 605 claim, is also legally sufficient.

25          While, for the reasons stated above, Mr. Martinez has stated a substantive claim for relief

26   both with respect to the § 605 claim as well as the conversion claim, the claim under § 605 is barred.

27   More specifically, based on the face of the complaint and the evidence submitted in support of the

28   motion for default judgment, the § 605 claim is time barred.  *Cf. Huynh v. Chase Manhattan Bank*,

United States District Court

For the Northern District of California

1   465 F.3d 992, 997 (9th Cir. 2006) (providing that a claim may be dismissed under Federal Rule of

2   Civil Procedure 12(b)(6) when "the running of the statute is apparent on the face of the complaint").

3   In its supplemental papers, J&J concedes that binding Ninth Circuit authority holds that a § 605

4   claim is governed by a one-year statute of limitations.  In *DirecTV, Inc. v. Webb*, 545 F.3d 837 (9th

5   Cir. 2008), the Ninth Circuit noted that "§ 605 does not have its own limitations period" and

6   ultimately concluded that the district court properly "determined that the California Piracy Act,

7   which has a one-year statute of limitations, was 'most closely analogous' to § 605."  *Id.* at 847-48;[2]

8   *see also J&J Sports Prods., Inc. v. Pacis*, No. C 08-00326 JW, 2008 U.S. Dist. LEXIS 104375, at

9   *4-7 (N.D. Cal. Dec. 15, 2008) (concluding, based on *DirecTV*, that plaintiff's § 605 claim was

10  untimely because it was filed approximately two years after plaintiff's investigator witnessed the

11  alleged unlawful conduct), *adopted* by 2010 U.S. Dist. LEXIS 1812 (N.D. Cal. Jan. 11, 2010).

12  Since J&J's investigator learned of the unlawful conduct on the day it occurred, *i.e.*, October 6,

13  2007, J&J should have filed suit by October 6, 2008.  J&J did not do so.  Instead, as noted above, it

14  initiated this action on October 2, 2009.  *See* Docket No. 1 (complaint).

15          In its supplemental papers, J&J argues that the § 605 claim should not be time barred

16  because equitable tolling should be applied in the instant case.  The Court is not persuaded.

17              The doctrine of equitable tolling . . . focuses on whether there
            was excusable delay by the plaintiff: "If a reasonable plaintiff would
18          not have known of the existence of a possible claim within the
            limitations period, then equitable tolling will serve to extend the
19          statute of limitations for filing suit until the plaintiff can gather what
            information he needs."
20

21  *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (internal quotation marks omitted).  In the

22  case at bar, equitable tolling is not applicable based on facts because there is no dispute that J&J's

23  investigator learned of the unlawful conduct on the day it occurred, *i.e.*, on October 6, 2007.  This is

24  not a situation where J&J did not learn of the fact of the unlawful conduct more than one year later.

25          J&J argues still that equitable tolling should be applied because the Ninth Circuit's decision

26  in *Webb* -- *i.e.*, that there is a one-year limitations period for a § 605 claim -- was not issued until

27  ───────────────────

28          [2] The Court is troubled by the failure of J&J to bring this binding precedent to the attention of
    the Court.

United States District Court

For the Northern District of California

1   September 25, 2008.  Because the unlawful conduct occurred on October 6, 2007, this left J&J with

2   fewer than two weeks to file suit (*i.e.*, by October 6, 2008).  The Court remains unpersuaded.

3       Citing *Capital Tracing, Inc. v. United States*, 63 F.3d 859 (9th Cir. 1995), J&J contends that

4   a lack of clarity in the law can justify equitable tolling.  *See generally* Docket No. 23 (Pl.'s 2d Supp.

5   Br.).  But *Capital Tracing* is distinguishable for several reasons.

6       First, in *Capital Tracing*, the Ninth Circuit allowed for equitable tolling based on a lack of

7   clear precedent within the Ninth Circuit.  *See id.* at 862.  What is significant to the court's holding is

8   that the law in the circuit appeared to be conflicting as to whether the district court had jurisdiction

9   to determine the rightful owner of the funds at issue in exoneration proceedings.  *See id.* at 862-63.

10  Relying on precedent which suggested the court had such jurisdiction, the plaintiff "exercised its

11  rights at what it thought was the earliest opportunity."  *Id.* at 863.  That assumption turned out to be

12  erroneous thanks to an intervening Ninth Circuit decision.  But the plaintiff's decision not to file a

13  claim asserting wrongful levy was reasonable in light of the apparent state of law.  In the instant

14  case, there was no conflicting precedent within the Ninth Circuit that would have reasonably misled

15  J&J on the issue of the applicable statute of limitations for a § 605 claim.  Indeed, the reasoning of

16  the Ninth Circuit in *Webb* was grounded in long established Supreme Court precedent.  There was

17  nothing surprising or unpredictable in the *Webb* decision.  Moreover, there was already prior district

18  court authority that the statute of limitations for a § 605 claim was one year – *i.e.*, the limitations

19  period for the comparable California state law claim.[3]  *See DirecTV, Inc. v. Bunnapradist*, No. CV

20  03-3399 SVW (SHSx), 2004 U.S. Dist. LEXIS 31040, at *5 (C.D. Cal. Sept. 23, 2004) (stating that,

21  "[a]lthough 47 U.S.C. § 605 has no express statute of limitations, the proper statute of limitations to

22  apply is the one-year statute of limitations from the California Penal Code relating to television

---

23

24      [3] Notably, this federal court was not alone in concluding that the statute of limitations for the
        comparable state law claim should apply.  *See, e.g.*, *KingVision Pay-Per-View, Corp. v. 898 Belmont,*

25      *Inc.*, 366 F.3d 217 (3d Cir. 2004); *DirecTV, Inc. v. Wright*, 350 F. Supp. 2d 1048 (N.D. Ga. 2004);
        *Kingvision Pay Per View, Ltd. v. Wilson*, 83 F. Supp. 2d 914 (W.D. Tenn. 2000).

26      The Court notes that each of these cases was cited by J&J in its second supplemental brief.  J&J

27      asserts that, in these cases, the courts concluded that a limitations period of at least two years was
        appropriate.  However, that misses the underlying analysis of the courts – *i.e.*, that the limitations period

28      should be the limitations period for the comparable state law claim.  Here, as the court in *Webb* held,
        that comparable claim is the California State Piracy Act to which a one-year limitations period applies.

United States District Court

For the Northern District of California

1   signal piracy, not the three-year statute of limitations from the Federal Copyright Act or the

2   two-year statute of limitations from 18 U.S.C. § 2520(e)"). Hence, it was not reasonable for J&J to

3   risk a longer limitations period, particularly since J&J had nothing to gain by waiting.

4          Second, in *Capital Tracing*, application of equitable tolling was permissible because the

5   statute of limitations (which the Ninth Circuit assumed to be nine months) had in fact expired by the

6   time that the plaintiff filed its lawsuit. That is not the case here. J&J does not dispute that, at the

7   time that the *Webb* decision was issued, it still had two weeks within which it could have filed this

8   action against Mr. Martinez. J&J's protestations that it could not have filed a lawsuit within that

9   two-week period is not particularly convincing. J&J did not need to do any additional investigation

10  to file the lawsuit (the investigator Mr. Gravelyn had signed an affidavit back in 2007), and nothing

11  barred J&J from filing the lawsuit and then trying to resolve the dispute with Mr. Martinez without

12  going to trial.[4] Also, J&J was more than equipped to file a § 605 lawsuit against Mr. Martinez in

13  2008 given that it has been filing § 605 cases since at least 2005. *See, e.g.*, *J&J Sports Prods. v.*

14  *McIntosh*, No. 05-CV-5734 (ILG) (RER), 2006 U.S. Dist. LEXIS 28628 (E.D.N.Y. May 10, 2006);

15  *J & J Sports Prods. v. Lopez*, 05-CV-5799 (JG) (RER), 2006 U.S. Dist. LEXIS 60105 (E.D.N.Y.

16  June 3, 2006).

17         Third, in any event, even if equitable tolling under *Capital Tracing* applied, that tolling

18  would run for a year after the *Webb* decision was issued. *See Capital Tracing*, 63 F.3d at 863

19  (allowing for equitable tolling only until the date that the Ninth Circuit issued its opinion clarifying

20  the law). As noted above, *Webb* was issued on September 25, 2008. Therefore, even under *Capital*

21  *Tracing*, J&J should have filed suit by September 25, 2009. J&J, however, did not do so, ultimately

22  filing suit on October 2, 2009. *See* Docket No. 1 (complaint).

23

24  _____

25         [4] The Court also notes that J&J has not provided any evidence to support its claims that it
26  delayed in filing suit because of "necessary investigation and corresponding attempts to resolve this
    matter informally." Docket No. 23 (Pl.'s 2d Supp. Br. at 3). At the hearing, J&J noted that the Court
    did not ask for supplemental briefing on why it delayed in filing suit for more than a year after *Webb*
27  issued, but this ignores the fact that the Court did ask J&J for additional briefing as to whether the § 605
    claim was time barred and it was J&J who brought up the issue of equitable tolling in the first place in
28  its supplemental papers.

United States District Court

For the Northern District of California

1    Accordingly, the Court finds that the § 605 claim lacks merit based on the statute of

2  limitations.  In so finding, the Court acknowledges that, as a general matter, an affirmative defense

3  is waived by virtue of a default.  *See In re Estate of Marcos Human Rights Litig.*, 978 F.2d 493, 495

4  n.2 (9th Cir. 1992) (refusing to consider whether action was time barred because "this is an

5  affirmative defense which was waived by virtue of [the] default").  But this is only because "an entry

6  of default prevents the defendant from disputing the truth of well-pleaded facts in the complaint

7  pertaining to liability."  *Conetta v. National Hair Care Centers, Inc.*, 236 F.3d 67, 75-76 (1st Cir.

8  2001).  Here, it is facially obvious from the well-pleaded facts of J&J's complaint, as well as the

9  evidence submitted by J&J in support of the motion for default judgment, that the statute of

10  limitations is a complete defense.  *Cf. Huynh*, 465 F.3d at 997; *Franklin v. Murphy*, 745 F.2d 1221,

11  1228 (9th Cir. 1984) (noting that a court may dismiss an action sua sponte pursuant to 28 U.S.C. §

12  1915(d) "where the defense is complete and obvious from the face of the pleadings or the court's

13  own records").

14    The Court therefore recommends that J&J's motion for default judgment be granted with

15  respect to the conversion claim but denied with respect to the § 605 claim.

16  C.    Damages

17    In the instant case, J&J seeks only $800 in damages for the conversion claim.  *See* Mot. at

18  15.  California Civil Code § 3336 provides:

19      The detriment caused by the wrongful conversion of personal property
20      is presumed to be:

21      First -- The value of the property at the time of the conversion, with
        the interest from that time, or, an amount sufficient to indemnify the
        party injured for the loss which is the natural, reasonable and
22      proximate result of the wrongful act complained of and which a proper
        degree of prudence on his part would not have averted; and

23      Second --A fair compensation for the time and money properly
24      expended in pursuit of the property.

25  Cal. Civ. Code § 3336.  In the case at bar, J&J has submitted evidence that the sublicense fee for the

26  program at issue would have been $800 for an establishment with a seating capacity of 1-50 persons.

27  *See* Gagliardi Decl. ¶ 8 & Ex. 1 (showing rates).  Accordingly, the Court recommends that J&J be

28  awarded the $800 in damages that it requests.

**United States District Court**

For the Northern District of California

### III.   <u>RECOMMENDATION</u>

For the foregoing reasons, the Court recommends (1) that the motion for default judgment be granted in part and denied in part and (2) that J&J be awarded $800 in damages.

J&J is ordered to serve a copy of this report and recommendation on Mr. Martinez within three days of the date of this order.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated:  March 2, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge